FILED

1    CALDWELL LESLIE & PROCTOR, PC
     LINDA M. BURROW, State Bar No. 194668
2       burrow@caldwell-leslie.com
     MATTHEW O'BRIEN, State Bar No. 261568
3       obrien@caldwell-leslie.com
     1000 Wilshire Boulevard, Suite 600
4    Los Angeles, California 90017-2463
     Telephone: (213) 629-9040
5    Facsimile: (213) 629-9022

6    Attorneys for Plaintiff
     NEW LINE HOME ENTERTAINMENT,
7    INC.

2012 APR 20  PM 3: 22

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

8

9                        UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11                        CV12-3464—SJO
                                (JEM)

12
     NEW LINE HOME ENTERTAINMENT,        COMPLAINT FOR BREACH OF
13   INC.,                               CONTRACT

14              Plaintiff,
                                         DEMAND FOR JURY TRIAL
15        v.

16   HIGHLAND TRADING CO., LLC,

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

                                                            COMPLAINT

## NATURE OF THE ACTION

1.      Plaintiff New Line Home Entertainment, Inc. ("New Line") entered into a contract (the "Liquidation Agreement") in or around May 2007 with Defendant Highland Trading Co., LLC ("Highland") in which New Line agreed to sell more than 3.9 million DVDs from its surplus inventory to Highland so that Highland could re-sell the DVDs to third parties.  Highland agreed to pay New Line approximately $5.9 million for the DVDs.

2.      New Line sent all of the DVDs to Highland in a series of shipments beginning in 2007 and ending in mid-2008.  In mid-2008, pursuant to a negotiated "swap" with New Line, Highland returned over one million of these DVDs to New Line.  At that point, Highland still possessed (or had re-sold to third parties) more than 2.9 million of the DVD units that New Line had transferred to Highland pursuant to the Liquidation Agreement.

3.      Highland was obligated to pay New Line for the DVDs in six payments beginning in May 2008.  Highland, however, failed to make any of these payments.  Highland's breach has caused New Line to suffer significant damages, including but not limited to the sum of $4,441,762.50 that Highland owes New Line for the approximately 2,961,175 DVDs that Highland obtained from New Line and never returned.

## THE PARTIES

4.      New Line is a New York corporation qualified to do business in California, with a principal place of business in Los Angeles, California.  New Line is engaged in the business of distributing home entertainment products such as DVDs for sale to consumers.  As used herein, "New Line" includes New Line's corporate parent, Warner Bros. Entertainment, Inc.

5.      New Line is informed and believes that Highland is a limited liability company organized in Connecticut, whose only member, Joseph Paul Brady, is a

CALDWELL
LESLIE &
PROCTOR

COMPLAINT

1   citizen of Connecticut.  Highland engages in the business of liquidating surplus

2   inventory from distributors of home entertainment.

3   ## JURISDICTION AND VENUE

4   6.   Jurisdiction is proper under 28 U.S.C. § 1332(a) because the amount in

5   controversy exceeds $75,000 and the dispute is between citizens of different states.

6   7.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a

7   substantial part of the events or omissions giving rise to New Line's claims occurred

8   in the Central District of California, and because the parties irrevocably agreed to

9   submit to "exclusive personal jurisdiction" in the federal courts in the State of

10  California.

11  ## FACTUAL BACKGROUND

12  ### The Liquidation Agreement

13  8.   New Line and Highland entered into the Liquidation Agreement

14  (attached hereto as Exhibit A), dated as of May 1, 2007, in which New Line agreed

15  to sell 3,967,295 units of its surplus DVDs to Highland.

16  9.   Pursuant to the Liquidation Agreement, Highland agreed to pay New

17  Line $5,950,942.50, less freight credit, according to the following payment

18  schedule:

19  (a)   One Million Dollars ($1,000,000) thereof no later than nine (9)

20        months from the date that Highland picks up the first shipment of

21        Merchandise from the warehouse (**'Pickup Date'**);

22  (b)   One Million Dollars ($1,000,000) thereof no later than twelve (12)

23        months after Pickup Date;

24  (c)   One Million Dollars ($1,000,000) thereof no later than fifteen (15)

25        months after Pickup Date;

26  (d)   One Million Dollars ($1,000,000) thereof no later than eighteen

27        (18) months after Pickup Date;

28

CALDWELL
LESLIE &
PROCTOR

COMPLAINT

1    (e)  One Million Dollars ($1,000,000) thereof no later than twenty-one

2         (21) months after Pickup Date;

3    (f)  Nine Hundred Fifty Thousand, Nine Hundred Forty-two Dollars

4         ($950,942.50) thereof, less the "Freight Credit" (as defined

5         below), no later than twenty-four (24) months after Pickup Date.

6  Liquidation Agreement, ¶ 3 (emphasis in original).

7       10.   The Liquidation Agreement required that "[p]rior to Highland's

8  shipment of Merchandise to its purchasers, at Highland's sole cost, Highland shall

9  deface the UPC code(s) on all units of Merchandise in a manner and extent so that

10  such units cannot be fraudulently returned to [New Line] as non-liquidated product

11  by third party purchasers." Id., ¶ 4(a).

12       11.   In addition, the Liquidation Agreement gave New Line the right, "at

13  any time and at its sole discretion, [to] re-purchase any number of units back from

14  Highland, at [New Line's] sole discretion, at a price of One Dollar and Fifty Cents

15  ($1.50) per unit, plus freight charges." Id., ¶ 4(c).

16       12.   The Liquidation Agreement contained an integration clause, which

17  confirmed that the "Agreement and the Schedule(s) attached hereto contain the

18  entire understanding between the parties and supersede all prior and

19  contemporaneous agreements and understandings, written and oral, with respect to

20  the subject matter herein." Id., ¶ 8(e).  The Agreement also provided that "[n]o

21  waiver of any provision of this Agreement shall be deemed or shall constitute a

22  continuing waiver of such provision or a waiver of any other provision, unless

23  otherwise expressly provided for in a writing signed by both parties," and that the

24  "agreement may not be modified except by a writing signed by both parties." Id.

25       13.   Finally, the Liquidation Agreement confirmed that "the parties hereto

26  irrevocably consent and submit to the exclusive personal jurisdiction of the federal

27  courts of the State of California." Id., ¶ 8(f).

28

CALDWELL
LESLIE &
PROCTOR

COMPLAINT

### New Line's Performance and Highland's Breach

14.     Pursuant to Paragraph 1 of the Liquidation Agreement, New Line transferred 3,967,295 DVD units to Highland in 2007 and 2008.  Highland accepted these goods.

15.     Under the Liquidation Agreement, Highland's first $1,000,000 payment to New Line was due nine months after "the date that Highland picks up the first shipment of Merchandise from the warehouse (**'Pickup Date'**)." *Id.*, ¶ 3(a) (emphasis in original).  Highland picked up the first shipment of DVDs from New Line on or about May 1, 2007.  Accordingly, the Pickup Date defined in Paragraph 3(a) of the Liquidation Agreement was May 1, 2007, and Highland's first $1,000,000 payment was due nine months later, on or about February 1, 2008.  However, at Highland's request, New Line agreed to extend the deadline for Highland's first payment from February 1, 2008 to May 1, 2008, and to adjust the schedule for Highland's subsequent payments accordingly (*i.e.*, each payment deadline under Paragraph 3 of the Liquidation Agreement was extended by three months).  Accordingly, Highland's first $1,000,000 payment was due on or about May 1, 2008.

16.     Highland did not make the initial $1,000,000 payment by May 1, 2008, or by any date thereafter.  Indeed, Highland has never paid any money for the DVDs that New Line delivered to Highland pursuant to the Liquidation Agreement, despite the clear payment schedule set forth in Paragraph 3 of the Liquidation Agreement.

17.     Pursuant to Paragraph 4(a) of the Liquidation Agreement, Highland was obligated to "deface the UPC code(s) on all units of Merchandise in a manner and extent so that such units cannot be fraudulently returned to [New Line] as non-liquidated product by third party purchasers."

18.     New Line is informed and believes that Highland did not deface all of the UPC codes on the New Line DVDs that Highland re-sold to third parties, but instead asked third-party liquidators to whom it re-sold New Line's DVDs to deface

1  the units, in direct contravention of Highland's obligations under the Liquidation

2  Agreement.

3  **The Proposed Swap in 2008**

4      19.   In 2008, New Line and Highland entered into negotiations for a "swap"

5  whereby Highland would return approximately one million DVD units to New Line

6  in exchange for approximately one million different DVD units that New Line

7  would provide to Highland thereafter.  New Line agreed to this "swap"

8  notwithstanding its unequivocal right to "re-purchase any number of units back from

9  Highland, at [New Line's] sole discretion."  *Id.*, ¶ 4(c).

10      20.   Following the parties' negotiations, Highland returned approximately

11  1,006,120 DVD units—just over a quarter of the DVD units that New Line initially

12  sold to Highland—to New Line in mid-2008.  Accordingly, out of the 3,967,295

13  units that New Line had supplied to Highland pursuant to the Liquidation

14  Agreement, Highland thus retained approximately 2,961,175 units even after

15  returning the product to New Line.

16      21.   New Line was fully prepared to comply with this "swap" by sending

17  approximately one million additional DVD units to Highland to make up for the

18  units that were returned.  By the time New Line was to send Highland the additional

19  units, however, Highland was already several million dollars delinquent on its

20  agreed-upon payment schedule.  Indeed, Highland had failed to make any of the

21  payments it was obligated to make under the Liquidation Agreement.  New Line

22  therefore informed Highland that it would not send the additional DVDs to Highland

23  until Highland fulfilled its outstanding payment obligations under the Liquidation

24  Agreement.

25  **New Line's Demands for Payment**

26      22.   Highland retained (or re-sold to third parties) approximately 2,961,175

27  units out of the 3,967,295 units that it initially received from New Line.  Highland

28  never paid New Line for these DVDs.

23.     New Line has demanded that Highland pay for the DVDs on numerous occasions.  On December 12, 2008, for example, New Line emailed Highland a detailed accounting of the DVDs that New Line had sold to Highland, and listed— and demanded payment for—the first three scheduled payments (totaling $3,000,000) for which Highland already was in default.  In follow-up emails and telephone calls between New Line and Highland, New Line repeatedly restated its request for payment from Highland.  But Highland persisted in its refusal to comply with its obligations under the Liquidation Agreement.

24.     On April 23, 2010, New Line mailed a formal demand to Highland. The letter documented that Highland owes New Line no less than $4,441,762.50, which represents the total amount owed by Highland to New Line under the Liquidation Agreement ($5,950,942.50) less the 1,006,120 units that Highland returned to New Line ($1.50 per unit, for a subtotal of $1,509,180).

25.     Despite these demands, Highland has not paid any of the monies owed to New Line under the Liquidation Agreement.  Instead, Highland has attempted to excuse its lack of performance on the basis of New Line's decision not to proceed with the delivery of the additional DVD units in late 2008 as part of the proposed swap.  The proposed swap, however, did not alter Highland's payment obligations under the Liquidation Agreement.  Moreover, as New Line has explained to Highland, it already has credited Highland for the $1,509,180 value of the 1,006,120 DVD units that Highland returned to New Line in 2008 as part of the proposed swap.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

26.     New Line realleges each and every allegation set forth in Paragraphs 1 through 25 and incorporates them herein by reference.

27.     On or about May 1, 2007, New Line entered into the Liquidation Agreement with Highland, under which, among other things, New Line agreed to

1  sell 3,967,295 DVD units to Highland, and Highland agreed to pay New Line

2  $5,950,942.50 (less freight costs) for those units.  Highland also agreed to deface the

3  UPC codes on the DVD units it received from New Line prior to re-selling the units

4  to third parties.

5       28.    New Line has performed in accordance with the terms and conditions

6  of the Liquidation Agreement, except for those conditions, covenants, obligations,

7  or promises that were waived, excused, or prevented by Highland.

8       29.    Highland materially breached Paragraph 3 of the Liquidation

9  Agreement by failing to pay for the DVDs that New Line sold to Highland.

10       30.    Highland materially breached Paragraph 4(a) of the Liquidation

11  Agreement by failing to deface the UPC codes on New Line's DVD units prior to

12  Highland's re-sale of the units to third parties.

13       31.    New Line has suffered actual and consequential damages as a direct

14  and proximate result of Highland's breaches in an amount to be proven at trial, but

15  in any event not less than $4,441,762.50.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

CALDWELL
LESLIE &
PROCTOR

-7-

COMPLAINT

1    WHEREFORE, New Line respectfully prays for a judgment against Highland

2    as follows:

3        1.    For actual and consequential damages in an amount to be proven at

4    trial;

5        2.    For all pre-judgment interest, fees, and costs of suit to which New Line

6    is entitled by law; and

7        3.    For such other and further relief as this Court deems just and proper.

8    DATED: April _19_, 2012            Respectfully submitted,

9                                       CALDWELL LESLIE & PROCTOR, PC
10                                      LINDA M. BURROW
                                        MATTHEW O'BRIEN
11

12                                      By _____
13                                           LINDA M. BURROW
14                                      Attorneys for Plaintiff
                                        NEW LINE HOME ENTERTAINMENT, INC.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-8-

COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2    New Line hereby demands a jury trial in this action.

3

4    DATED:  April *19* , 2012              Respectfully submitted,

5                                           CALDWELL LESLIE & PROCTOR, PC

6                                           LINDA M. BURROW
                                            MATTHEW O'BRIEN
7

8

9                                           By _____
10                                              LINDA M. BURROW
11                                           Attorneys for Plaintiff
                                             NEW LINE HOME ENTERTAINMENT, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR
                                        -1-
                                                                    COMPLAINT

# EXHIBIT A

**EXECUTED COPY**

## LIQUIDATION AGREEMENT

This agreement ("Agreement") dated as of May 1, 2007 is entered by and between New Line Home Entertainment, Inc. ("NLHE"), with offices at 888 7th Avenue, New York, NY 10106 and Highland Trading Co., LLC ("Highland"), with offices at Maplewood Industrial Park, Unit 3B, 458 Danbury Road, New Milford, CT 06776.

**Whereas**, in order to achieve marketing and other business objectives, NLHE desires to liquidate surplus inventory;

**Whereas**, for the purpose of liquidating the Merchandise, NLHE desires to sell the Merchandise and Highland desires to purchase the Merchandise pursuant to the terms set forth below.

**Now, therefore**, in consideration of the mutual covenants herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, NLHE and Highland agree as follows:

1.  **MERCHANDISE.**  Subject to the terms and conditions of this Agreement, NLHE hereby agrees to sell and transfer title to Three Million, Nine Hundred Sixty-Seven Thousand, Two Hundred Ninety-five (3,967,295) units of DVD merchandise, the selection of which shall be as set forth on Schedule A attached hereto (collectively, "Merchandise"), to Highland.  Highland hereby acknowledges and agrees that Merchandise may not be returned or exchanged, and that Highland shall distribute the Merchandise only as permitted in Paragraph 4 below.  Highland shall not sell, license, distribute or in any manner deal with any of the Merchandise except as provided in the Agreement.

2.  **TRANSFER OF OWNERSHIP.**  The parties acknowledge and agree that legal title to Merchandise shall be transferred to Highland immediately upon its execution of this Agreement, and the risk of loss as well as the cost of insurance, warehousing, shipping and handling such Merchandise shall be the sole responsibility of Highland.  NLHE shall make the first truck load(s) of Merchandise available for collection by Highland at NLHE's designated warehouse premises no later than five (5) business days after NLHE's receipt of this Agreement executed by Highland.  Thereafter, NLHE shall coordinate with Highland to make the remaining Merchandise available for collection over the course of the subsequent twenty (20) business days, and Highland hereby agrees to make reasonable good faith efforts to pickup all remaining Merchandise from NLHE's designated warehouse facility within such twenty (20) business day period .

3.  **PAYMENT SCHEDULE.**  Highland shall pay to NLHE, in full consideration for the Merchandise, an amount equal to Five Million, Nine Hundred Fifty Thousand, Nine Hundred Forty-two Dollars and Fifty Cents ($5,950,942.50), less the "Freight Credit" (as defined below), payable as follows:

    (a)    One Million Dollars ($1,000,000) thereof no later than nine (9) months from the date that Highland picks up the first shipment of Merchandise from the warehouse ("**Pickup Date**");

(b)     One Million Dollars ($1,000,000) thereof no later than twelve (12) months after Pickup Date;

(c)     One Million Dollars ($1,000,000) thereof no later than fifteen (15) months after Pickup Date;

(d)     One Million Dollars ($1,000,000) thereof no later than eighteen (18) months after Pickup Date;

(e)     One Million Dollars ($1,000,000) thereof no later than twenty-one (21) months after Pickup Date;

(f)     Nine Hundred Fifty Thousand, Nine Hundred Forty-two Dollars and Fifty Cents ($950,942.50) thereof, less the "Freight Credit" (as defined below), no later than twenty-four (24) months after Pickup Date;

(g)     Freight Credit:  For purposes of this Agreement, the **"Freight Credit"** shall be an amount equal to One Hundred Thousand Dollars ($100,000), which represents the reasonable anticipated costs that will be incurred by Highland in connection with Highland's shipment of Merchandise from NLHE's designated warehouse(s) to Highland's storage facilities.  For purposes of clarity and removal of doubt, the Freight Credit shall not be increased in the event that Highland's actual shipping costs exceed the credit set forth herein.

4.     **MERCHANDISE RESTRICTIONS**:  Highland hereby agrees to the following Merchandise restrictions:

(a)     Defacement:  Prior to Highland's shipment of Merchandise to its purchasers, at Highland's sole cost, Highland shall deface the UPC code(s) on all units of Merchandise in a manner and extent so that such units cannot be fraudulently returned to NLHE as non-liquidated product by third party purchasers.  For the purposes of clarity and by way of example, any permanent marking or punch-thru of the UPC code would suffice.

(b)     Sales Restrictions:  Highland may only sell and/or distribute Merchandise within the United States and its territories and possessions.  Highland may not sell and/or distribute Merchandise to any outlets listed on Schedule B (or to any outlets which Highland, at the time of sale, knows intends to re-sell such Merchandise to outlets listed on Schedule B), which is attached hereto and incorporated herein, and which is subject to change at NLHE's reasonable discretion.  Highland shall not sell and/or distribute in any one (1) calendar month: (i) more than an aggregate of Fifteen Thousand (15,000) units of either version (i.e., rated and un-rated versions) of "Wedding Crashers"; and (ii) more than Twenty-five Thousand (25,000) units of any of the "The Lord Of The Rings: The Return of the King" versions.

(c)     Non-returnable/Repurchase:  All Merchandise is non-returnable to NLHE; provided, however, that NLHE, at any time and at its sole discretion, may re-purchase any number of units back from Highland, at NLHE's sole discretion, at a price of One Dollar and Fifty Cents ($1.50) per unit, plus freight charges actually incurred by Highland in

connection with the shipment of such units back to NLHE.  NLHE hereby acknowledges that if it should re-purchase any units of Merchandise hereunder that the UPC codes on all such units shall have been defaced pursuant to Paragraph 4(a) above.

(d)     Advertising:  Highland shall use good faith efforts to discourage purchasers of Merchandise to not advertise the name(s) and/or price(s) of any titles of Merchandise in any marketing, promotional or publicity materials.  In the event that Highland becomes aware that a purchaser(s) of Merchandise is advertising the name(s) and/or price(s) of the titles of Merchandise in marketing, promotional or publicity materials, Highland shall immediately notify such purchaser in writing to cease and desist.  If the offending purchaser does not cease such advertising within a reasonable period of time, or continues to routinely advertise the name(s) and/or prices of the titles of Merchandise, Highland shall be prohibited from selling and/or distributing any Merchandise to such purchaser(s) on a foregoing basis, and shall notify NLHE in writing immediately thereafter.

(e)     Excluded Merchandise:  NLHE hereby acknowledges that Highland may acquire DVD product from other sources ("**Excluded Units**") (some of which may be the same titles as those included in Merchandise), and that such Excluded Units shall not be subject to any of the Merchandise restrictions set forth above.

5.     **FURTHER OBLIGATIONS.**

(a)     by NLHE:

(i)     New Line hereby agrees that it will not sell and/or distribute any Titles to any other liquidators/remainders for a period of one (1) year from the date of this Agreement.

(ii)     In the event that NLHE enters into any so-called "barter" transactions with third parties regarding the purchase of DVD units ("**Barter Units**") within a period that is one (1) year from the date of this Agreement, NLHE shall contractually require such barter partner to exclusively sell such units to Highland at a price no greater than One Dollar and Fifty Cents ($1.50) per unit; provided, that Highland must be willing to purchase such units at the quantity and price offered by such barter partner, and if not, then such barter partner may sell the units to a third party on terms at its discretion without any obligation to Highland.

(b)     by Highland:  In the event that Highland purchases or takes possession of any Barter Units from NLHE's barter partner(s), Highland hereby acknowledges and agrees that all restrictions set forth in Paragraph 4 above shall be apply to such Barter Units as well.

6.     **REPRESENTATIONS & WARRANTIES**

(a)     Except as expressly contemplated in Paragraph 4 above, Highland shall not copy, duplicate, edit, add to, modify, cut, alter, deface or otherwise change or exhibit the Merchandise as provided by NLHE in any manner.  Highland will not at any time alter, remove or delete any credit, logo or copyright notice appearing on the Merchandise as shipped by NLHE.

(b)    Except as expressly approved in writing by NLHE, Highland shall not use or authorize the use of the names New Line Home Entertainment, New Line Cinema, Time Warner Inc. or any successor-in-interest, affiliate or licensor of New Line Home Entertainment, New Line Cinema, Time Warner Inc., or any derivation or facsimile of any of the above, and Highland shall not employ any trademark of, or other reference to, any of the foregoing, except as contained in the Merchandise provided by NLHE.

(c)    Highland shall not for itself and shall not authorize anyone else on its behalf, to use the name and/or likeness of NLHE, NLHE Bros., AOL Time NLHE inc. or any successor-in-interest, affiliate or licensor or any of the foregoing or anyone associated with any of the Merchandise delivered hereunder in such manner as to constitute endorsement, express or implied, of any service or entity of Highland by any of the foregoing;

(d)    Highland has the full power and authority to enter into and perform its obligations under this Agreement;

(e)    Highland will take no action that would violate the copyright, trademark or patent rights of NLHE;

(f)    Highland will comply in all respects with any and all applicable local, state and/or federal laws or regulations in connection with the performance of its obligations under this Agreement; and

(g)    Highland's representations and warrants hereunder shall survive any cancellation, termination or expiration of this Agreement.

## 7.    SECURITY INTEREST

(a)    Highland hereby grants to NLHE a first position security interest in the Merchandise to secure all of Highland's obligations under this Agreement, including, without limitation, the obligation to timely pay all sums due under Paragraph 3 above, to comply with all Merchandise restrictions in Paragraph 4 above, and to further secure against any material breach of any representation or warranty made by Highland in this Agreement.

(b)    Upon signing of this Agreement, Highland shall deliver to NLHE an executed copy of the Security Interest Assignment attached hereto as Exhibit "C" and incorporated herein by this reference, and any other documents and/or financing statements in the forms reasonably required by NLHE to evidence and perfect the above-referenced security interest.

(c)    NLHE shall have all of the rights as a secured party under the California Uniform Commercial Code with respect to the Merchandise.

## 8.    MISCELLANEOUS

(a)    In connection with this Agreement, each of the parties hereto shall become privy to certain proprietary, confidential information of the other party ("Confidential

Information"). Notwithstanding the foregoing, the term "Confidential Information" as used herein shall not include information: (i) of the disclosing party (hereinafter, the "Owner") already publicly available at the time of the disclosure to the other party hereto (hereinafter, the "Recipient") or which becomes publicly available thereafter other than by breach of this Agreement by the Recipient; or (ii) already known to the Recipient prior to disclosure and documented in its written records prior to disclosure; or (iii) rightfully received by the Recipient from a third party without similar restriction from such party and the disclosure of which by such third party does not constitute a violation of an obligation by such third party to the Owner. Each of the parties hereto acknowledges that Confidential Information is proprietary to and a valuable trade secret of the owner thereof. Each party will hold in confidence any and all Confidential Information disclosed to it, directly or indirectly, pursuant to this Agreement and hereby undertakes the following obligations:

(i) not to disclose, without the prior written consent of the Owner, Confidential Information outside of the Recipient and Recipient's affiliates and agents who need to know the Confidential Information to perform the activities expressly contemplated by this Agreement;

(ii) not to utilize the Confidential Information for any purpose other than as expressly permitted hereunder;

(iii) to take all reasonable precautions to safeguard the confidentiality of the Confidential Information, including, all precautions taken by Recipient to safeguard its own confidential information; and

(iv) to return to the Owner thereof (or destroy) the Confidential Information, including all copies and records thereof, upon receipt of a written request therefore from Owner.

(b) Highland, on the one hand, and NLHE, on the other, (each an "Indemnitor") each indemnifies and agrees to hold harmless the other, its permitted successors and assigns, shareholders, officers, directors, agents, representatives, employees, and/or subdistributors of the Merchandise and/or each of them (collectively referred to herein as the "Indemnified Party") from and against any and all claims, liabilities, costs, expenses, suits, losses, damages, recoveries (including, without limitation, reasonable attorney's fees and disbursements), including interest, incurred by the Indemnified Party or between the Indemnified Party and any third party or otherwise, arising out of any breach or alleged breach of any warranty, representation, agreement or inducement herein made by the Indemnitor. The indemnification obligations contained herein shall survive the expiration or termination of this Agreement.

(c) Highland waives any right to pursue any remedies in connection with this Agreement other than a suit for money damages.

(d) The undersigned hereby warrant that they have the express and unqualified authority to bind their respective companies to this Agreement.

(e)    This Agreement and the Schedule(s) attached hereto contain the entire understanding between the parties and supersede all prior and contemporaneous agreements and understandings, written or oral, with respect to the subject matter herein and no representations, warranties, inducements, promises or agreements, oral or otherwise, by or between the parties not contained herein or incorporated herein by reference shall be of any force or effect.  This Agreement may not be modified except by a writing signed by both parties nor may it be assigned by either party hereto without the prior written consent of the other party hereto.    Notwithstanding the foregoing, NLHE may freely assign this Agreement or any rights or obligations hereunder, all or in part, to any subsidiary or affiliate of NLHE or its respective subsidiaries, affiliates or divisions or to any successor entity acquiring all or substantially all assets of Time Warner, Inc., New Line Cinema, New Line Home Entertainment or into which any of the foregoing are merged or consolidated, subject, in each case, to such entities agreeing to be bound by the terms hereof.  Any assignment made in violation of this Agreement shall be void.  No waiver of any provision of this Agreement shall be deemed or shall constitute a continuing waiver of such provision or a waiver of any other provision, unless otherwise expressly provided for in a writing signed by both parties.

(f)    This Agreement shall be governed by the laws of the State of California without reference to principles of choice of laws.  In the event of any litigation, action or other proceeding relating to or arising out of this Agreement, or the performance and enforcement of this Agreement, the parties hereto irrevocably consent and submit to the exclusive personal jurisdiction of the federal courts of the State of California.  Each of the parties' consents that service of process may be made on them by registered mail or overnight courier (with delivery confirmed), to their respective addresses set forth herein. With respect to NLHE, any service of process should be addressed to the attention of the Senior Vice President, Business Affairs, and General Counsel.

If the foregoing accurately sets forth your understanding of our Agreement please sign and return the enclosed copy of this Agreement.

HIGHLAND TRADING CO., LLC

By: _____

Name: _____

Title: _____

NEW LINE HOME ENTERTAINMENT, INC.

By: _____

Name: _____

Title: _____

## SCHEDULE A

### Merchandise

**[BILLS OF LADING TO BE INSERTED HERE]**

## SCHEDULE B

| COMPANY NAME | CLASS OF TRADE |
|---|---|
| AMAZON | .COM |
| BOOKS ONLINE | .COM |
| CRITIC'S CHOICE | CATALOG |
| PLAYBOY | CATALOG |
| AAFES | DIST |
| ALLIANCE ENT | DIST |
| AMERICAN SALES | DIST |
| BAKER & TAYLOR | DIST |
| CAV DIST | DIST |
| DART DIST | DIST |
| DELTA ENT | DIST |
| DISCOUNT VIDEO WAREHOUSE | DIST |
| DV&A | DIST |
| DVD EMPIRE | DIST |
| EDUCATION 2000 INC | DIST |
| FIRST VIDEO EXCHANGE | DIST |
| FLASH DISTRIBUTORS | DIST |
| FRONTIER VIDEO DIST | DIST |
| HANDLEMAN | DIST |
| IMAGE ENTERTAINMNET | DIST |
| INGRAM ENTERTAINMNET | DIST |
| LIBRARY VIDEO | DIST |
| MID WEST TAPES | DIST |
| MONTERY MEDIA | DIST |
| MOVIES UNLIMITED | DIST |
| MUSIC VIDEO DISTRIBUTORS | DIST |
| NAOH'S ARK | DIST |
| NATIONAL MUSIC RACK | DIST |
| NAVARRE | DIST |
| NEWTOWN VIDEO DIST | DIST |
| NORTH AMERICAN DVD | DIST |
| NORWALK DIST. | DIST |
| RED DIST | DIST |
| VENTURA DIST. | DIST |
| VIDEO ACTION SPORTS | DIST |
| VIDEO GROUP DIST | DIST |
| RED DIST | DIST |
| VPD INC | DIST |
| W.I.T | DIST |
| WAXWORKS/VIDEOWORKS | DIST |
| ANDERSON | RACK JOB |
| BARJAN | RACK JOB |
| ALBERTSONS | RETAIL |
| AFFILIATED FOODS | RETAIL |

| | |
|---|---|
| AHOLD | RETAIL |
| AMERICAN DRUG | RETAIL |
| AMERICAN SALES/GIANT | RETAIL |
| AMMARS INC | RETAIL |
| BEST BUY | RETAIL |
| BIMART | RETAIL |
| BJ'S | RETAIL |
| BLOCKBUSTER | RETAIL |
| BORDERS GROUP INC | RETAIL |
| BROOKS PHARMACY | RETAIL |
| BROOKSHIRE BROS | RETAIL |
| BROOKSHIRE GROCERY | RETAIL |
| BROWN & COLE | RETAIL |
| C & K MARKETS | RETAIL |
| C & S WHOLESALE GROCERS | RETAIL |
| CARR SAGEWAY | RETAIL |
| CIRCUIT CITY | RETAIL |
| COMMUNITY DISTRIBUTORS | RETAIL |
| COSTCO | RETAIL |
| CUB FOODS | RETAIL |
| CVS | RETAIL |
| DOLLAR GENERAL | RETAIL |
| DONINICKS | RETAIL |
| DUANE READE | RETAIL |
| DUCKWALL-ALCO | RETAIL |
| DVD PLANET | RETAIL |
| ECKERDS | RETAIL |
| EUROPAC WAREHOUSE SALES | RETAIL |
| FALLEY FOOD 4 LESS | RETAIL |
| FAMILY DOLLAR | RETAIL |
| FOOD 4 LESS | RETAIL |
| FOOD MAXX | RETAIL |
| FRED MEYER | RETAIL |
| FREDS | RETAIL |
| FRESH BRANDS - PIGGLY WIGGLY | RETAIL |
| FRY'S ELCETRONICS | RETAIL |
| GERLAND'S | RETAIL |
| GIANT FOOD | RETAIL |
| H.E.B | RETAIL |
| HEB | RETAIL |
| HOLLYWOOD VIDEO | RETAIL |
| HOME BY DARK | RETAIL |
| KERR DRUG | RETAIL |
| LONG'S DRUG | RETAIL |
| MARSHALL'S | RETAIL |
| MED-X | RETAIL |
| MEIJER | RETAIL |
| MILLS FLEET AND FARM | RETAIL |

| | |
|---|---|
| MINYARD | RETAIL |
| MUSICLAND | RETAIL |
| PAMIDA | RETAIL |
| PARTY CITY | RETAIL |
| PEP BOYS | RETAIL |
| PIGGLY WIGGLY | RETAIL |
| PILOT OIL | RETAIL |
| RANDALLS | RETAIL |
| RITE AID | RETAIL |
| ROSES | RETAIL |
| ROSS | RETAIL |
| ROUNDUP/FRED MEYER | RETAIL |
| SAFEWAY | RETAIL |
| SAMS | RETAIL |
| SAMS CLUB | RETAIL |
| SHOPKO | RETAIL |
| SMITH FOODS | RETAIL |
| SPARTAN | RETAIL |
| STRACK & VAN TIL | RETAIL |
| SUPER D | RETAIL |
| TARGET | RETAIL |
| TJ MAXX | RETAIL |
| TOWER RECORDS | RETAIL |
| TOYS-R-US | RETAIL |
| TRANSWORLD | RETAIL |
| VARIETY WHOLESALE | RETAIL |
| VETERANS CANTEEN | RETAIL |
| VIRGIN MEGA | RETAIL |
| WOLFE VIDEO | RETAIL |
| WALGREENS | RETAIL |
| WALMART | RETAIL |
| WEIS | RETAIL |
| WHEREHOUSE | RETAIL |
| ICON | REMAINDERER |
| M & M MUSIC | REMAINDERER |
| FIRST NATIONAL PICTURES | REMAINDERER |
| WORLD TRADING CENTER | REMAINDERER |
| PLATINUM ENTERTAINMENT | REMAINDERER |

## EXHIBIT C

## SECURITY INTEREST ASSIGNMENT

HIGHLAND TRADING CO., LLC (**"Highland"**), and New Line Home Entertainment (**"NLHE"**) have entered into that certain liquidation agreement dated as of May 1, 2007 (as amended, supplemented or otherwise modified from time to time, the **"Liquidation Agreement"**) in connection with Highland's purchase of Three Million, Nine Hundred Sixty-Seven Thousand, Two Hundred Ninety-five (3,967,295) units of DVD product. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Liquidation Agreement.

GRANT OF SECURITY INTEREST. For good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, pursuant to the Liquidation Agreement and as security for the full payment and performance, whether direct or indirect, absolute or contingent, or now or hereafter due or arising, of all Highland's "Obligations" (defined below), Highland hereby mortgages, assigns, transfers, sets over, conveys, grants and delivers to NLHE a security interest and lien in and to all right, title and interest in and to the Merchandise wherever located and whether now owned or hereafter acquired (such security interest and lien are collectively referred to herein as the **"Security Interest"**). The Security Interest is being granted to secure: (i) Highland's obligations to make timely payments as required under Paragraph 3 of the Liquidation Agreement, (ii) Highland's compliance with the Merchandise restrictions set forth in Paragraph 4 of the Liquidation Agreement, and (iii) all other obligations, covenants, representations and warranties of Highland under the Liquidation Agreement, whether now existing or hereafter arising (collectively, the **"Obligations"**). Highland hereby irrevocably constitutes and appoints NLHE as its lawful attorney-in-fact to do all acts and things permitted or contemplated by the terms hereof and pursuant to the Liquidation Agreement. Without limiting the generality of the foregoing, the conveyance and assignment contained herein includes all prior causes of action, at law, in equity and otherwise, the right to recover all damages and other sums, and the right to other relief allowed or awarded at law, in equity, by statute or otherwise. Such appointment constitutes a power coupled with an interest and is irrevocable until such time that Highland's Obligations have been discharged.

MERCHANDISE: "Merchandise" shall mean each and every DVD unit which Highland has taken, and will take, possession of pursuant to the Liquidation Agreement, the titles and quantities of which are set forth in Schedule A attached to such Liquidation Agreement.

DEFAULT/REMEDIES. Highland shall be in "Default" hereunder if it fails to pay or perform any Obligation in a due and timely manner, or if any of Highland's representations and warranties shall have been false when made or deemed made or if Highland is the subject of an order for relief or any other order under any bankruptcy, reorganization, receivership, liquidation, insolvency, compromise, arrangement or moratorium statute, law or regulation, whether now in force or hereafter enacted, of any nature whatsoever. Upon the occurrence of any Default, NLHE shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code with respect to the Merchandise and all other rights and remedies under all other applicable laws.

This Security Interest Assignment is made expressly subject to the terms and conditions contained in the Liquidation Agreement. This Security Interest Assignment shall be governed by, and construed in accordance with, the laws of the State of California. This Security Interest Assignment is made and entered into as of May 1, 2007.

IN WITNESS WHEREOF, Highland has caused this Security Interest Assignment to be duly executed and delivered by its managing member or officer thereunto duly authorized as of the date written above.

HIGHLAND TRADING CO, LLC ("**Highland**")

By: _____
Its: _____

NEW LINE HOME ENTERTAINMENT, ("**NLHE**")

By: _____
Its: _____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV12- 3464 SJO (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
  burrow@caldwell-leslie.com
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017
Tel: (213) 629-9040     fax: (213) 629-9022

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW LINE HOME ENTERTAINMENT, INC.<br><br>PLAINTIFF(S)<br><br>v.<br><br>HIGHLAND TRADING CO., LLC,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12-3464 -SJO (JEMx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Linda M. Burrow_____, whose address is _1000 Wilshire Blvd., Ste. 600, Los Angeles, CA 90017_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __APR 2 0 2012__

By: _____
           Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
NEW LINE HOME ENTERTAINMENT, INC.

**DEFENDANTS**
HIGHLAND TRADING CO., LLC,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW
1000 Wilshire Boulevard, Suite 600, Los Angeles, CA 90017 (213) 629-9040

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☑4 | ☐4 |
| Citizen of Another State | ☐2 | ☑2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☑1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from another district (specify):   ☐6 Multi-District Litigation   ☐7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑No   ☑MONEY DEMANDED IN COMPLAINT: $ 4,441,762.50

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
BREACH OF CONTRACT. Jurisdiction based on 28 U.S.C. § 1332(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV12- 3464

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Connecticut |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date: April 19, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |